Sylvia (Parrish) CASTLE, Plaintiff,

v.

Raymond Wallace PARRISH, Defendant.

In the Matter of Raymond Wallace PARRISH, Debtor.

Bankruptcy No. 3–82–01920.
Adv. No. 3–82–0492.

United States Bankruptcy Court,
S.D. Ohio, W.D.

May 2, 1983.

---

**870**

Michael .Catanzaro, Springfield, Ohio, for debtor/defendant.

Barry W. Vermeeren, Sandusky, Ohio, for plaintiff.

George Ledford, Englewood, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

Raymond Wallace Parrish filed a voluntary petition for relief under Chapter 13 on July 6, 1982. His wife, Florence Evelyn Parrish, did not join in the petition although she is listed as regularly employed. No objections were interposed to the proposed plan and an Order of Confirmation was duly entered on 19 August 1982. The Plan requires monthly payments in the amount of $220.00 for a period of thirty-six months. The total secured debts scheduled was in the amount of $37,170.98, of which $28,476.98 represented two mortgages on residential real estate as scheduled. The balance represents a debt and security interest on a 78 Dodge Motor Home in the amount of $4,627.00 and a debt of $240.00 to Snap-on Tool Corporation. The unsecured debts totaled $26,460.00 of which $24,000.00 represents a debt to Sylvia Castle, scheduled as a "Judgment Creditor."

The meeting of creditors pursuant to 11 U.S.C. § 341(a) was held on 3 August 1982. Sylvia (Parrish) Castle filed a secured claim prior thereto, on 27 July 1982, in the total amount of $24,136.00.

The Plan as confirmed provides, in general, that secured creditors shall be paid pro-rata the value of their secured claim plus 10% interest and shall retain their liens until completion of payments under the Plan.

On 19 August 1982 the Debtor filed "NOTICE TO DECLARE LIEN AVOIDED," expressing "his intent to declare the judgment lien of creditor Sylvia Castle avoided, said lien being evidenced by a Certificate of Judgment filed June 30, 1982 upon the lands of the Defendant with the Champaign County Recorder's Office," on the basis the judgment lien impairs the debtor's right to an exemption in the real estate.

On 30 June 1982 Sylvia Castle had instituted the instant adversarial proceeding to determine the dischargeability of her claim, in the amount of $23,550.00 plus interest from March 17, 1982. The claim of the Plaintiff stems from a Decree of Divorce entered in the Erie County Common Pleas Court on 21 May 1964, between Sylvia Parrish Castle and Raymond Wallace Parrish. In pertinent part the decree awarded the custody of the parties' five minor children to Sylvia Parrish. The decree further orders the Defendant to pay the sum of $50.00 each and every week for the support of these minor children. The support payments were to commence on May 8, 1964, and continue until the minor children had reached the age of 18 years. The decree further provides that, "It is further ordered by the Court that in the event that either party intend [sic] to remarry, she or he will notify the Court at least sixty (60) days before the date of their intended remarriage."

After the divorce Defendant left the area and never made any attempt to contact his former wife or the minor children issue of the marriage. He was aware that a warrant for his arrest had been issued in 1964. After the divorce the total paid by him for child support was only $450.00. At the time, the Plaintiff was unemployed and was required to go on Welfare for two months until employment could be obtained. The Prosecuting Attorney endeavored to locate the Defendant without success. The Plaintiff never gave up in her attempts to locate her ex-husband although she was not successful until late 1981. After the children had attained majority and were no longer being supported by the Plaintiff, they were successful in locating the Defendant and advised their mother of his whereabouts. He and his family were less secretive in putting the children in touch with him.

On 15 June 1982 Plaintiff filed a motion in the State Court to reduce the arrearages and support payments to lump sum judgment. By agreement of the parties a judgment was entered on 17 March 1982, in pertinent part as follows:

"Upon the basis of the agreement between the parties, it is HEREBY, ORDERED, ADJUDGED AND DECREED that the Plaintiff is given judgment against the Defendant in the sum of $24,000.00 of which $4,000.00 is to be paid on or before August 9, 1982, in a lump sum although the remaining $20,000. is currently owed and is in all respects payable upon demand. It is further ORDERED that the Plaintiff shall make no attempts to garnish Defendant's wages unless he misses a payment of the $50.00 per week as agreed. All payments are to be made by check issued to the Order of Barry W. Vermeeren, and mailed to his office 300 Feick Building, P.O.Box 1389, Sandusky, Ohio 44870."

Defendant subsequently made nine payments of $50.00 each and then discontinued making payments. On 30 June 1982, Plaintiff filed a Certificate of Judgment for lien upon the lands of the Defendant in the office of the Recorder of Champaign County, Ohio.

There is no evidence that the payment of the weekly support payments over the years would have been impossible or would have created any undue hardship to the Defendant. The evidence does reveal that the Defendant never sought relief from the State Court Decree in 1964 because of hardship or a change in circumstances. During the period from 1964 until 1981 that the Defendant concealed his whereabouts from his ex-wife and five minor children the Plaintiff supported the children by working long hours and often was required to hold two different jobs in different cities. She presently has only the sum of approximately $100.00 per week, earned as a waitress or bar maid.

## DECISION

In behalf of Plaintiff it is urged that the claim for support of the minor children is not dischargeable, citing 11 U.S.C. § 523(a)(5) and *Hylek v. Hylek,* 148 F.2d 300 (7th Cir.1945). It is further argued, as follows:

"The recent cases on this issue have not been unanimous in their decisions. Flying in face of 'stare decisis' is the recent case of *In re Nelson* [16 B.R. 658], ([Bkrtcy.Tenn.] 1981) CCH Bankruptcy Law Reporter, ¶ 68,569, which held that where the children had reached majority and there was no present need of the payments by the ex-wife or children and the State Court remedies were available to the ex-wife during the period that the payments were occurring the debt was dischargeable. This writer could'nt disagree more with the Court in *Nelson*. If it is followed, it would turn the bankruptcy court into a court of domestic relations, weighing the relative need of the ex-spouses to the money and determining whether the creditor spouse had properly availed herself of her state court remedies. It seems as though the Court in *Nelson* was willing to totally disregard the clear mandate of 11 U.S.C. § 523(a)(5) in favor of a burdensome trial procedure which would award a debtor for abandoning his children and eluding the efforts of his ex-spouse to avail herself of some help in rearing their children."

The Defendant counters by the argument, as follows:

That the lump sum judgment supercedes the support decree and does not "represent a figure for present or future support of children since all the children were self-supportive and clearly emancipated at the time of the filing of the petition herein... This is evidenced by a careful reading of the March 17, 1982 entry, where Plaintiff incorporated language providing for garnishment if weekly payments were missed. Further, the entry required Defendant to transfer interest in a motor home if a four thousand dollar ($4,000) lump sum was not paid by August 9, 1982... These facts evidence an intent of the parties that the debt was to be treated like any other debt in order to establish a basis for post-judgment remedies under Ohio law. Had Plaintiff established an arrearage without reducing it to judgment and had there been a

need for support, the obligation would remain as one of support."

The Defendant further argues, citing *In re Warner,* 5 B.R. 434, 6 B.C.D. 788 (Bkrtcy. D.Utah 1980), that the determination of whether or not a decree for support is dischargeable is based upon a determination at the time of the filing in the bankruptcy court, as to whether the payments are reasonably necessary for the support and maintenance of the spouse and children both at the time the debt was imposed in the divorce decree and at the time a discharge of the debt is attempted. The conclusion urged is, as follows:

"Applying the *Warner* case criteria to the instant case, it is evident that inquiry should be made into the present need by Plaintiff Sylvia Parrish (Castle) for the need of support for her children. Her testimony at the trial established that she is no longer in need of support. The children will not receive the money from the judgment should it be held non-dischargeable."

The facts present, in final analysis, a question of public policy and a balancing of the intent and purpose of the State Court Decree to provide subsistence for the minor children of Defendant juxtaposed to the intent and purpose of bankruptcy law of providing a new start in life to a Defendant burdened by preexisting debts.

This Court has in numerous other cases held that a decree for support or alimony does not lose its nondischargeable character by merger into a subsequent lump sum judgment. See *In re Charles Richard Butler,* Case No. B-3-77-1328 (at Dayton, January 10, 1978), citing *In The Matter of Avery,* (C.C.A. 6th, 1940) 44 Am.B.R. (N.S.) 168, 114 F.2d 768. Such is also the holding in *Hylek v. Hylek* (1945, C.C.A. 7) 148 F.2d 300, as cited by Plaintiff.

In the matter *sub judice* there is no dispute that the award by the State Court in the 1964 decree was for the support of the Defendant's five minor children. This fact and the amount of the award necessary and proper is *res judicata,* over which the state court has exclusive jurisdiction to modify, if necessary, because of change in circum-

stances or need. Furthermore, the judgment of the same state court entered on 17 March 1982 in the amount of $24,000.00 is *res judicata* as a determination of "the amount of arrearage in child support." In fact, the Defendant never sought relief from the support award in the only court with jurisdiction over such matters; and, does not now claim that the payments were not made because of inability or other hardship, or that the child support was no longer necessary.

The balancing test as developed in the opinions *In re Harrell,* 7 B.C.D. 1408, 13 B.R. 302 (Bkrtcy.N.D.Ga.1981); *In re Warner,* 6 B.C.D. 788, 5 B.R. 434 CCH B.L.R. ¶ 67,631 (Bkrtcy.D.Utah, 1980); and *In re Nelson,* 16 B.R. 658, CCH B.L.R. ¶ 68,569 (Bkrtcy.Tenn.1981), for the purpose of a finding of dischargeability because of a change in circumstances in the fact that the dependent children were emancipated and no longer in need of support, does not recognize the deprivation already suffered by the other spouse (and the children) because of deliberate and malicious avoidance of a legal duty and the state court decree. It seems incongruous to conclude that a mother who, by necessity, provides support (as here, to five children) has waived the right of reimbursement and contribution from the childrens' father after he "skipped out" and could not be located until the need for future support no longer exists. Such a rationale if extended to other nondischargeable debts (such as taxes, fraud, and criminal offenses) would emasculate the determination by the Congress that public policy prevents the discharge of certain debts which bear overriding importance. Even more incongruous, such an approach would fly in the face of the public policy of the nearly universal common law and state statutes which fasten criminal liability upon parents for neglecting or failing to support their minor children. For various Ohio statutory criminal offenses, see Ohio Revised Code §§ 2151.42, 2151.99, 2901.18, 3113.01, 3113.06, 3113.99. Furthermore, a warrant for arrest issued in the state court against the Defendant herein was never served because he and his family successfully concealed his whereabouts.

Looking to the terms of the statute, this Court is constrained to hold that it is the duty to support a dependent child that is not dischargeable, and the amount payable under such a duty is a matter within the traditional jurisdiction of the state courts. The duty of support is determined as of the date of the state court determination and cannot be collaterally determined by a federal court. The only function to be served in the bankruptcy court as to arrearages for support of minor children is to determine the nature of the debts under federal standards, if there is a need of interpretation.

In case of doubt or ambiguity, what constitutes "support" must be determined under the bankruptcy laws, not state law. The legislative history of 11 U.S.C. § 523(a)(5) specifically mentions that the statute adopts the result, as obtained in cases such as *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952), and overrules cases such as *In re Waller,* 494 F.2d 447 (C.C.A. 6, 1974). House Report No. 95–595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. In the case *sub judice,* it is important to note that the facts are not subject to interpretation or dispute. The state court decree was undeniably for the support of five minor children of the Defendant.

If the need for support at some point in time no longer existed, the forum for relief is the state court. If an absconding spouse hides from the state court having jurisdiction over the matter, a collateral attack in the bankruptcy court should not be available merely because the duty of support was borne by the other spouse or because the state court can no longer enforce the decree by punitive measures. Assuming the state court in Ohio no longer has a remedy sounding in contempt of court, this Court concurs with the conclusion *In Matter of Beggin,* 19 B.R. 759 (Bkrtcy.D.Wash.1982). The support award for the benefit of the five minor children was awarded to Plaintiff in their behalf and she has a continuing cause of action to collect the arrearages. Even though a discharge has not as yet been granted in this case, this Court is constrained to follow the

rational of *In re Sokolsky,* 18 B.R. 138 (Bkrtcy.Fla.1982) and *Hylek v. Hylek,* 148 F.2d 300 (C.C.A. 7 1945) as to the paramount public policy applicable.

Ancillary to the dischargeability question are other issues raised by the facts and pleadings.

As the debt secured by the judgment lien is not dischargeable, the lien avoidance provisions of 11 U.S.C. § 522(f) cannot be invoked. The judgment lien bears priority in point of time. Further, the Debtor is presently residing in the premises but the nondischargeable debt is not being paid pursuant to the Plan as duly confirmed on 16 August 1982; hence, the Ohio Homestead Exemption is not presently impaired. This Court has previously held that a homestead exemption which is not impaired cannot be the basis for lien avoidance if the debtor's interest and title survive bankruptcy. See 11 U.S.C. § 522(f) and *In the Matter of Hines,* (Bkrtcy.Ohio 1982) 20 B.R. 44.

It must be concluded that the public policy expressed in excepting certain debts from a discharge must be read *in pari materia* with Section 522(f) as an exception to the avoidance of a lien which conflicts with the public policy expressed in denying dischargeability. From a functional analysis, since the claim survives the discharge to be entered upon consummation of payments rendered the Chapter 13 Plan, avoidance of the judgment lien would serve no purpose other than to jeopardize the priority of the Plaintiff's existing lien upon filing after the stay has been lifted. See *In re Byrd,* 15 B.R. 154 (Bkrtcy.Va.1981) reaching a similar conclusion based upon an express statutory provision in the Virginia statutes.

In any event, this Court has previously held that the remedy available pursuant to 11 U.S.C. § 522(f) is not inconsistent with lien retention enacted by 11 U.S.C. § 1325(a)(5)(B)(i). Quoting from *Matter of Lantz,* 7 B.C.D. 371, 7 B.R. 77 (Bkrtcy.Ohio 1980) at page 80, it was there held, however, as follows:

"The avoidance of lien goes to the remedy nevertheless, and not to the validity of the lien. If the debt is discharged, then the lien cannot be enforced...."

It necessarily follows that the right to avoid a lien has not fully matured in a Chapter 13 context until a discharge is granted upon successful completion of the Chapter 13 Plan. If a debtor neither duly pays the affected secured creditor by the Chapter 13 process nor elects to convert to a Chapter 7 administration and obtains a discharge in bankruptcy, lien avoidance is not operative. To hold otherwise would be inconsistent with the intent and purpose of both Sections 522(f) and 1328. See also this Court's decisions in *Matter of Snow,* 8 B.R. 113 (Bkrtcy.Ohio 1980), B.L.D. ¶ 67779; *Matter of Brahm,* 7 B.R. 253 (Bkrtcy.Ohio 1980), 3 C.B.C.2d 463.

Although the judgment lien is not affected by the order of confirmation, any action to enforce the lien has been stayed pursuant to 11 U.S.C. § 362 pending completion or termination of the Chapter 13 case, unless otherwise ordered. Furthermore, because there is no present need for support of the emancipated children, current payments are not mandatory if the value of distributions under the Plan on account of the judgment lien is not less than the allowed amount of the claim repayable at $50.00 per week. 11 U.S.C. § 1325(a).